IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. ) <br> MARCELINO GONZALEZ, ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> GUY PIERCE, Warden, Pontiac Correctional ) <br> Center, ) <br> ) <br> Respondent. ) | No.  05 C 0084 <br><br> Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Petitioner Marcelino Gonzalez has brought a pro se petition for habeas corpus relief pursuant to the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254, seeking to overturn his state conviction for attempted first-degree murder, aggravated battery with a firearm, and aggravated discharge of a firearm. For the reasons set forth below, the petition is denied.

## FACTS

On July 2, 1998, there was a shooting at Copley Park One in Aurora, Illinois in which four people were shot and injured. Shortly thereafter, petitioner was arrested in the vicinity of 536 Woodlawn, Aurora, Illinois, at approximately 7:45p.m., and transported to the Aurora Police Department. Petitioner was a juvenile at the time of his arrest, just two months shy of 17 years old. He had an IQ of 67, making him mildly mentally retarded, and his reading ability was that of a first grader. He attended school until only the 9th grade, and was enrolled in a "special school" for children with mental disabilities. His vocabulary comprehension was that of a 9 year old child. At the time of his arrest, petitioner was in the process of being initiated into a gang by

older offenders. As part of his initiation, the gang threatened to harm petitioner's family if he did not accept responsibility for the actions of others in the gang.

Petitioner gave a confession to Detective Jeffrey Sauer ("Sauer") and Investigator R. Downs ("Downs"). Additionally, at the time of his confession, petitioner asked if his parents had been contacted. The officers did not respond and did not call petitioner's parents. Petitioner therefore had no friendly adult or family member present at any time during his investigation or otherwise.

Petitioner's interrogation and confession were both videotaped and both took a total of twenty minutes. Before petitioner gave his confession, Downs (a certified juvenile police officer) read petitioner his rights out loud and asked Petitioner if he understood those rights. Petitioner responded that he did. Additionally, petitioner was able to read the first right listed on the <u>Miranda</u> form out loud. Petitioner claims that both Sauer and Downs were armed, although ultimately the Illinois Appellate Court ruled that they were not. Petitioner further alleged that during the interrogation, the police officers who questioned him never inquired into his educational background or mental capacity, employed the use of a juvenile officer, or made any attempt to treat him differently than an adult defendant. The Appellate Court disagreed with petitioner and found that the officers had done those things. Finally, petitioner alleged that Sauer lied to him about statements his co-defendants had made, creating an environment of coercion that was impermissible under the United States and Illinois Constitutions. The record does not contain the statements Sauer allegedly made.

After a hearing, petitioner was moved from the juvenile court to the adult criminal division for prosecution. Petitioner moved to suppress his confession, claiming that he did not

waive his Miranda rights knowingly and intelligently, but his motion was denied.  Petitioner was subsequently convicted on August 2, 2002, of one count of attempted first-degree murder, four counts of aggravated battery with a firearm, and five counts of aggravated discharge of a firearm. Petitioner was sentenced to four consecutive terms of 6 to 9 years on his aggravated battery charges and a concurrent term of 14 years on the attempted first degree murder conviction. Defendant's sentence totaled 27 years.  There is no indication in the Appellate Court's opinion as to why it took four years for the trial to be completed.

Petitioner appealed his convictions to the Illinois Appellate Court in the 2nd District on October 30, 2003, stating that the trial court erred in denying his motion to suppress his confession because it was involuntary.  He argued it was involuntary because he lacked the mental capacity to understand the Miranda warnings, he did not waive his rights, and the police failed to notify his parents of his arrest.  Petitioner also argued that the consecutive sentences should run concurrently because there was no evidence that the victims suffered severe bodily injury, and that was in direct conflict with the 6th Amendment and his due process rights.  In Illinois, when a judge determines that severe bodily injury has occurred, he has the discretion to impose concurrent or consecutive sentences on the defendant.  People v. Paino, 137 Ill.App.3d 645, 653 (1st Dist. 1985).  After the appeals court affirmed the trial court sentence and conviction on July 15, 2004, petitioner filed a petition for leave to appeal (PLA) to the Illinois Supreme Court on August 2, 2004, but it was denied on October 6, 2004.  On January 6, 2005, petitioner filed the instant petition for writ of habeas corpus alleging the two claims raised in both his direct appeal and PLA.

**DISCUSSION**

Count I: Involuntary Juvenile Confession

Petitioner argues that his petition for a writ of habeas corpus should be granted because he did not waive his Miranda rights knowingly, intelligently, or voluntarily, rendering his confession inadmissible. He argues alternatively that should this court need more evidence, an evidentiary hearing should be ordered. The state argues first that the confession was knowing and intelligent within the totality of the circumstances, and that petitioner's argument can prevail only if this court decides from looking at the evidence that the trial and appellate courts made a decision that was contrary to or an unreasonable application of United States Supreme Court precedent. The state also argues that an evidentiary hearing is unnecessary.

To obtain habeas relief under the AEDPA, petitioner must establish that the state court proceedings resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings." McFowler v. Jaimet, 349 F.3d 436, 446 (7th Cir.2003). The state court's decision is "contrary to" clearly established federal law if: (1) the state court arrives at a conclusion opposite to one reached by the United States Supreme Court on a question of law; or (2) the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent, and arrives at a result opposite to the Court. Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

A federal habeas court "may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal

law erroneously or incorrectly." Jackson v. Frank, 348 F.3d 658, 662 (7th Cir.2003). The court can issue a writ only if it determines that the state court's application of federal law was "objectively unreasonable." Williams v. Taylor, 529 U.S. at 409. It is a difficult standard to meet, because unreasonable means "something like lying well outside the boundaries of permissible differences of opinion." McFowler, 349 F.3d at 447.

The Illinois Appellate Court in the instant case was required to look to the totality of the circumstances to determine whether petitioner's confession was given knowingly and voluntarily. Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973). Specifically, the court stated, "In determining whether a defendant's will was overborne in a particular case, the Court has assessed the totality of all the surrounding circumstances-both the characteristics of the accused and the details of the interrogation." Id. Courts should look to a defendant's youth, education, intelligence, advice or lack thereof of his Constitutional rights, length of detention, repeated and prolonged nature of the questioning, and the use of physical punishment such as the deprivation food, without allowing one factor to control the rest. Id.

The Illinois Supreme Court has also adopted a totality of the circumstances test, but it also includes a defendant's background, experience, and physical condition to determine whether a confession was given knowingly and voluntarily. People v. Morgan, 197 Ill. 2d 404, 758 N.E.2d 813, 832 (2001). The Illinois Appellate Court considered the factors of both the federal and state totality of the circumstances tests in determining whether petitioner's case was sufficient to suppress his confession.

The Seventh Circuit has stated that "refusing a child's request to have a parent or other friendly adult (other than a lawyer) present is not enough to suppress the confession if other

5

factors indicate that the confession was voluntary." Hardaway v. Young, 302 F.3d 757, 765 (7th Cir. 2002).

The state appellate court's application of federal law was not objectively unreasonable with regard to petitioner. It looked at eight factors in determining the totality of the circumstances: (1) petitioner's age; (2) petitioner's education; (3) petitioner's mental capacity; (4) petitioner's prior experience with the criminal justice system; (5) police failure to contact petitioner's parents; (6) petitioner's failure to request the presence of his parents; (7) the lack of threats or promises made by police to petitioner; and (8) the length, duration, and atmosphere of the detention (20 minutes).

The appellate court noted at the outset that petitioner was a juvenile of 16 years and 10 months old at the time of his arrest, that he had attended school until the ninth grade, had the vocabulary comprehension of a nine year old, the reading ability of a first-grader, and had been described as "mildly mentally retarded" with an IQ of 67. In looking at these first three factors, they concluded that petitioner had given no indication that he did not understand his rights. To the contrary, Downs read him his rights out loud and asked if he understood those rights, to which petitioner answered in the affirmative. Petitioner read his rights on his own and initialed the form to indicate that he understood his rights. Downs and Sauer testified that petitioner was able to read his first right on the form. The appellate court concluded that the first three factors showed no evidence that petitioner did not understand his rights or his waiver.

The fourth factor, petitioner's previous experience with the criminal justice system, also indicated that petitioner understood his rights. The Appellate Court found that petitioner displayed a familiarity with the interrogation process by asking Sauer whether his parents had

6

been contacted. Petitioner had been arrested at least twice prior to the last arrest, in both August 1996 (for credit card theft), and again in 1997 (in connection with a residential burglary). On the first occasion, petitioner read his rights back to the juvenile officer at the time, and the officer assisted him when he had trouble. Petitioner indicated the first time that he understood his rights. He also read the waiver provision and indicated that he understood it. In 1997, petitioner had his rights read to him, and read back the first right. He then initialed each right to indicate he understood it. Finally, he read aloud the waiver provision and initialed it so he could speak with police about the offense. As the appellate court stated, petitioner never indicated that he did not understand his rights or the waiver provision. Therefore, the fourth factor in the totality of the circumstances weighs against petitioner's argument.

The fifth factor, the police's failure to notify petitioner's parents, was of great concern to the Appellate Court. They stated that under the Juvenile Act of 1987, 705 ILCS 405/5-405, the police must make every effort to contact a minor's parents immediately. Here, the court ruled that the police had violated the statute, noting that the burden is on the officer who arrested the minor to notify the parents. The court stated the purpose of the law was "to allow, where possible, [a] concerned adult to confer and counsel with the juvenile before interrogation and confession." The court also agreed with the trial court's assessment that the Aurora police department's failure to notify petitioner's parents was "careless," "disturbing," and "unprofessional." The Appellate Court further admonished the police officers that it is not too difficult to make sure a minor's parents have been contacted, or to make sure they are contacted as soon as possible, also noting that the officers had not prevented a concerned adult from speaking with petitioner. People v. Gonzalez, 351 Ill.App.3d 192, 202-03 (2nd Dist. 2004).

Although they were deeply disturbed by the failure of the police department to contact petitioner's parents, the court concluded that the breach of this factor alone was not enough to overcome the totality of the circumstances test to rule that the confession was involuntary.

The sixth factor, petitioner's question of whether his parents had been contacted, also influenced the Appellate Court in ruling against petitioner, because it did not think it was enough for petitioner to ask if his parents had been contacted. The court stated that petitioner had not specifically asked to speak with his parents, he had simply inquired as to whether they had been contacted. The Appellate Court did not hold that it agreed with the trial court's finding that the two questions were different, but concluded that it could not reverse because the finding was not "against the manifest weight of the evidence."

The seventh factor, coercion, was examined next. The Appellate Court looked at a video of the interrogation and confession. It ruled that there was no coercion and no threats were made to petitioner. The court found that neither officer was armed, petitioner was not handcuffed, and that there was no evidence that the officers threatened or made any promises to petitioner during the interview. The court considered evidence that petitioner later offered that he felt "scared" and that was why he confessed, but determined that petitioner's two previous experiences with the criminal justice system were enough to convince them that he understood his rights.

Finally, the eighth factor, the duration of the interrogation, was determined to be a non-issue as well. The interrogation was brief and lasted only 20 minutes.

In reviewing the appellate court's review of the totality of the circumstances, this court cannot find any evidence that the Appellate Court's findings were objectively unreasonable or

contrary to United States law or precedent. Instead, the court looked at every factor anew and considered petitioner's arguments in conjunction with the state's to reach its decision.

Count II: Consecutive Sentences

Petitioner claims that the trial court's determination that the victims suffered "severe bodily harm" was not proven beyond a reasonable doubt[1], and therefore, his sentences should run concurrently, not consecutively. In Illinois, when a judge determines that a defendant has inflicted severe bodily harm on a person or persons, he has the discretion to impose consecutive sentences. Absent an abuse of discretion, a reviewing court does not disturb that finding. People v. Paino, 137 Ill.App.3d at 653 (1st Dist. 1985). The relevant statute provides in pertinent part:

> "(a) When multiple sentences of imprisonment are imposed on a defendant at the same time . . . the sentences shall run concurrently or consecutively as determined by the court. . . . The court shall impose consecutive sentences if
>
> > (I) one of the offenses for which defendant was convicted was a Class X or Class 1 felony and the defendant inflicted severe bodily injury. . ..

730 ILCS 5/5-8-4(a).

The Appellate Court already reviewed petitioner's sentencing claim and determined that the victims suffered "severe bodily harm," and that aggravated battery with a firearm is a Class X felony. People v. Gonzalez, 351 Ill.App.3d at 206-07 (2nd Dist. 2004); 720 ILCS 5/12-4.2(b).

---

[1] Alternatively, the state claims that if petitioner is making this claim under Apprendi v. New Jersey, 530 U.S. 466 (2000), his claim is unexhausted because petitioner has not raised it in the Illinois courts, and he can still do so under the Illinois Post-Conviction Hearing Act. 725 ILCS 5/122-1(c). Further, the state argues that the count can still be dismissed on the merits if Apprendi is applied because petitioner's consecutive sentences do not exceed the statutory maximum sentence. Because the court denies this claim on other grounds, it need not reach the Apprendi argument here.

Federal habeas corpus relief is available only to a person in custody in violation of the United States Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). Habeas relief is not a remedy to fix errors of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). The determination of "severe bodily harm" versus regular "bodily harm" is a state law question. People v. Paino,137 Ill.App.3d at 653 (1st Dist. 1985). Consequently, petitioner's claim is not cognizable under federal habeas corpus review and his petition is denied because he is challenging the Illinois courts' factual findings and application of state sentencing rules, rather than asserting rights under the United States Constitution.

## CONCLUSION

For the reasons set forth in this opinion, petitioner's petition for Habeas Corpus is denied.

**ENTER:** August 15, 2007

*[signature: Robert W. Gettleman]*

**Robert W. Gettleman**
**United States District Judge**